We're going to move to our final case of the morning, Appeal 24-1886, Vonzell Scott, Sr. v. Wendy's Properties, LLC, and we're going to begin with oral argument from Mr. Muldoon. Good morning, Your Honors. Thank you for this opportunity. I'm Michael Muldoon. I represent the plaintiff, Appellant Vonzell Scott. Based upon the evidence and relevant Illinois case law, the District Court held that it was reasonably foreseeable that customers of Wendy's would be at risk for criminal assaults by third parties. Quote, an intentional third-party assault was not outside the zone of reasonable foreseeability, close quote, before and at the time of the occurrence. Therefore, Wendy's owed Scott a duty of reasonable care to protect him from reasonably foreseeable criminal attacks. The District Court further held that the evidence would support a jury finding, quote, that an armed security guard would have deterred the shooters from approaching and injuring Scott, close quote. And therefore, the burden of presenting the evidence that Wendy's actions were a cause in fact of Scott's injuries could be met. Because Wendy's conduct, the failure to extend the guard service to the overnight shift, was a substantial cause in fact factor of the attack on Scott, it is not necessary for Scott to show the exact manner of the attack, that that the exact manner of the attack could be reasonably foreseen, or that the manner of the attack was likely, natural and probable, easily predictable, or even highly probable. However, District Court went on to find that the actual omissions of Wendy's were not a legal cause of Scott's injuries because of the specific manner of the attack, and that was a superseding cause that was not reasonably foreseeable to Wendy's, according to District Court. And therefore, it granted Wendy's motion for summary judgment. District Court erred in deciding the issue of legal cause as a matter of law. The question of legal cause is a question for the jury. The District Court misapplied the law when it held that Wendy's failure to extend the hours of the security service to the overnight shift could not be a legal cause of the attack on Scott. The District Court also improperly weighed evidence, ignored evidence, and failed to view evidence in the light most favorable to Scott. Juries are often told, trial is like a jigsaw puzzle. You get the pieces of evidence from different sources and you've got to fit them together. You don't make your decision on one piece, you see how they all fit together and you get the big picture. You don't isolate the pieces and make judgments on that. That's what the District Court did in this case. A few examples. There was testimony that the restaurant was in a dangerous neighborhood. There was evidence that from the drive-thru window, you could see shootings, carjackings, and people getting all types of different altercations, both on and off the premises. There was a shootout in the neighborhood sometime before the night of the occurrence. Rather than fitting that evidence in with all the other evidence, the court disregarded it, holding that it was not persuasive because there was no evidence of a prior shooting at the drive-thru. That is the wrong legal analysis. That analysis was rejected by every case that was cited in our brief, their brief, and the court that took on the issue of legal cause. Meaning, your argument is that the lens through which the District Court is viewing the criminal activity is overly narrow because it limited it to the drive-thru and not the neighborhood? Shootings in the drive-thru, that narrow, yes. Exactly. Another example was Wendy's deemed the restaurant to be in a high-risk location and accounted for this risk by closing the dining room at 10 p.m. and keeping only the drive-thru. Rather than fitting the high-risk location assessment and evidence of closing the dining room at 10 o'clock for security purposes with all the other evidence, it again isolated that evidence, holding, quote, knowledge about the risks in the dining room during late-night hours, for example, did not mean Wendy's should have reasonably foreseen a shooting outside after the dining room was closed, close quote. Well, if you take all the customers out of the dining room and put them in the drive-thru lane, if you're reasonably foreseeing criminal activity, that's where it's going to occur, in the drive-thru lane, not in the dining room. Another example was that in August of 2018, several months, a few months before the occurrence, Wendy's national security manager took a visit to Wendy's and declared that unarmed guards would not do. Armed guards were necessary. The district court acknowledged that less than 2% of Wendy's restaurants nationwide employed armed security guards and also acknowledged that Wendy's employees requested armed guards for the overnight shift, but it ignored that evidence in its analysis of legal cause. Another example, the district court acknowledged that employees were directed to wear headsets when cleaning out the parking lot or taking out the garbage, so that they could call for help to someone inside the restaurant if they were physically attacked. However, rather than reasonably infer that a criminal attack on someone in the parking lot or drive-thru was so foreseeable that Wendy's sought to protect its employees by outfitting them with headsets to call for help, the district court instead made another inference and said, there is no admissible evidence that the headsets prevented any attack, nor is there evidence of a successful attack on a customer in the drive-thru, close quote. In a summary judgment, the court is directed to make inferences in favor of the non-moving party, in this case, Mr. Scott, and said it did the opposite. Think about this for a second. What type of an environment is this restaurant in? That employee says, I'm going to go take out the garbage, and the manager says, wait, hold on a second. Put on a headset in case you get attacked. If you get attacked, you can call for help. That's the kind of environment this restaurant was in when you take in all the circumstances, and Wendy's knew that, and that's why they had this headset requirement. That's all these factors plus the ones listed in the brief lead to the fact that a criminal attack, this shooting that happened at this restaurant was reasonably foreseeable and could have been prevented. This question, legal fact, is a question for the jury. It should not have been taken away by the court in this case. Would you like to reserve the remainder of your time? I'm going to wait. Yeah, I'm going to hold off and come back for rebuttal. Very good. Thank you, Mr. Muldoon. Thank you. Mr. Smith, we'll move to you now for argument from the appellee. Good morning, Your Honor. Good morning. May it please the court, counsel. My name is Bradley Smith. I represent Wendy's Properties LLC. This case is not about denying any applicable duties for restaurants or businesses to maintain a reasonably safe environment for patrons. Instead, this case focuses on whether or not the reasonable limitations on those duties are there, as well as foreseeability analysis when you're looking at proximate cause. When faced with the freakish, fantastic, and far-fetched event that we see in the video footage and the record here, this is not your average, everyday crime. This is not your normal situation. This is an attempted assassination on a vehicle that's either targeted or it's a mistaken target of some degree because what we see in this video footage is exceptional as to what occurred here. Mr. Smith, if our analysis of proximate cause is going to depend in part on knowledge of the criminal activity in and around this particular Wendy's, is it possible that their Wendy's might hypothetically be liable for criminal activity that would have occurred on that property? Patron-to-patron battery, a robbery, but not responsible for this particular crime because there hadn't been a previous shooting at the drive-thru? Well, I believe it's the aspect and nature and extent of this particular crime that makes that distinctive to that degree because what we're looking at here is in a situation where let's take, for instance, the hypothetical of plaintiff's argument with his expert that there should have been some security force here in the overnight hours to protect the drive-thru because dining room's not open, just the drive-thru's open at this hour. So let's take that hypothetically speaking. So I want to not bore the court with an analogy, but I'm going to give you an analogy to help with that proximate cause analysis that I think the court went through here. And there's plenty of case law that supports that from Illinois about what they did, what Judge Shah did with the proximate cause analysis and how he fine-toothed that. But the analogy is let's say you're on vacation and you like the beach. I don't know if you like the beach, but let's say you like the beach and there's no lifeguard present at the beach. And let's say either, well, for instance, there's some swimmers out in the water, waiting in the water, and we have a random strike of lightning. No expectation from forecast, nothing to show that that was the case, but yet we have a random strike of lightning that kills or severely injures those people in the ocean. That's the situation here. This is such an exceptional circumstance that we have here in this video footage that proximate cause is lacking. And what Judge Shah did there in analyzing that is he looked at the case law. And I'd still argue, and I did in my brief, if everyone noticed, is that there's no— I don't believe under the Witcher case and other case law in Illinois that there's a duty applicable here to this particular Wendy's for this type of incident because it's so incredible what occurred on this video footage. How broadly do we construe this type of incident? Because we can go from—there's a whole spectrum of crime, right? Sure. And at some juncture, Wendy's could be responsible under proximate cause for criminal activity on its property. The question is where we draw that line. So I'm trying to bring that out of you. Yeah, and I think that that is the indication here that this is an exceptional circumstance. This case is very particularly exceptional. I mean, we have this on video footage. The court has seen the video footage of what occurred. This was a 20-second—I think we said in our brief one minute, but when you actually look at what happened here, it's less than 20 seconds when you really record it down to the seconds. So this is a rapid-moving targeted assassination on this vehicle. And when we look at that type of fantastic, freakish, or far-fetched event, that's where you draw— And I believe that's why Judge Shah reasoned the way he did in his opinion. He took the video footage, looked at it. He looked at all the record that both parties had in here, and he assessed and said, okay, he didn't want to go on the duty analysis that I put forth, that I think there's no reasonable duty applicable to this type of thing because it's not reasonably foreseeable. But when we look at legal cause, as the case law shows in Illinois, and that's in the Colonial Inn-Motor Lodge case and other cases, reasonable foreseeability is a distinct analysis between duty and what we see as legal cause under the proximate cause analysis. And what types of criminal activity do you think would have met that test here? You're saying this is so freakish and it's out to the side, but what type of criminal activity would have met the test here? Well, that's the thing. We have to live with the case we have today as far as what that is. Now, I know if the court might be concerned from a policy standpoint, okay, how is this going to affect the future from a policy standpoint for both patrons and businesses? And what Judge Shaw did in his opinion is he assessed that and he looked at, you know, and I think by ruling on the proximate cause issue, it was a very scalpeled-out opinion to rule on that specific issue so that there aren't broad-based policy concerns for the court if it's wrestling with the duty analysis. Because when I wrote my brief, I think duty isn't applicable here, you know, and you can see that in the district court submissions that I had as well as the submissions to court. Now, I believe the judge got it right when he looked at the proximate cause analysis, but I think he could have went on the duty too. But if the court is overly concerned with the future and how this case would be interpreted down the road when we look at criminal acts at quick service restaurants and that sort of thing in the drive-through, then Judge Shaw's opinion lays a great proximate cause analysis out for why this is only applicable in this type of exceptional, fantastic event that occurred here on the video footage. So that's the reasonable basis for that. And, you know, without that type of hypothetical, what type of crime would it be, I think that we have to take this case as it is and what occurred here. And if the court's concerned with policy issues of businesses and patrons, Judge Shaw has a great opinion. If you disagree with that and you agree that duty shouldn't be applicable here, then you can certainly affirm on duty as well. That was argued in the record and that's available to the court. But if you're concerned with those policy considerations and how the crimes are interpreted and the level of the crime and that sort of thing, then, you know, Judge Shaw's opinion greatly aligns and lays that out as far as proximate cause analysis goes in legal cause. And they're supported. We're looking at Illinois case law here and it's supported that legal cause can be decided as a matter of law. And in this case and in this exceptional circumstances for a fantastic, freakish, and far-fetched event such as this, this is the type of case that that legal cause would be lacking and summary judgment was appropriately granted under those circumstances. This is not a bar. This is not a nightclub. This is not a restaurant that's got salsa dancing or something at night overnight, okay? This is a quick service restaurant trying to serve hamburgers to the community through the drive-thru overnight. And so the dining room's closed. They're serving hamburgers through the drive-thru. There's no party going on. There's no liquor served at this establishment that would create some reasonable expectation of an issue. And even in the case law that we cite in our briefs in Illinois, some of the cases, these establishments did have that sort of thing, like even in the Witcher case. But, you know, the court looked at specifically that it was so unreasonable and so exceptional of a circumstance to have such a targeted attack in that case that they would not apply duty to the particular establishment, which was a nightclub. And then we have a quick service restaurant here where drive-thrus aren't the only thing open at this hour. So the fact of the matter is this is such a freakish, fantastic, and far-fetched event that under the proximate cause analysis, and we're looking specifically at legal cause here, under that analysis it's unforeseeable that this would occur or this would come about as far as a targeted attempted assassination on a vehicle. Because this was an aligned effort. It was rapid moving, and the shooters took their positions on both sides of the vehicle, and it was just tragic what occurred, but very exceptional, unpreventable, and it's something that Wendy's couldn't properly foresee. So the judge made the correct ruling here, and I'd ask this court to affirm his ruling either on that basis, on the proximate cause basis, or on the duty analysis, or both. Because I believe it's all laid out there, but if the court is concerned, again, with the broad-based duty analysis and what that would mean for the future, then the proximate cause analysis of Judge Shaw should be affirmed, and summary judgment should stay, in this case should stay dismissed. Thank you. Thank you, Mr. Smith. Mr. Muldoon, we'll go back to you now for rebuttal argument. Thank you. As to the line drawing issue and the policy issue, okay, the answer is the same. I mean, first of all, we know that there were shootings and carjackings within eyesight of the drive-thru window. The district court kind of poo-pooed that. Said, well, that was across the street at the gas station. But, I mean, that's the kind of violent crime that's going on that you can see from the window. And the policy issue, the answer is the same. Whether it's going to be a carjacking, whether it's going to be a robbery, the answer is the same. It's a security guard. It's an armed security guard. The same armed security guard service you had from 9 o'clock in the morning until 10.30 at night. So there's no burden here. All you do is you extend the hours to the overnight ship, which, by the way, the employees asked for, and then you've solved the problem. Whether it's this type of shooting, that type of shooting, carjacking, any kind of violent crime, the answer is the same. You have an armed security service there because they serve as a deterrent, and everybody agrees on that. As far as this being a targeted attack, again, it's in both briefs. There's no reason to believe this was targeted. There's no reason to believe the shooters knew Scott, knew Scott was at Wendy's, knew who was in the car they were shooting at. Scott lived a mile away. It took him two minutes to get there. He was there for 15 minutes. There's no reason to believe that he was followed there. You know, there was no facts. They hired an expert to say that it was targeted, but he found no facts to support that this was a targeted assassination attempt. But they keep using that over and over in an attempt. As far as the Wichelt case goes, that case is a good case for contrast. At the establishment of Wichelt, first of all, the attacker came in, had a conversation with the victim that was described as cordial, and then he pulled out a sharp object and struck him. But in that case, you know, they didn't have the type of neighborhood information. Their expert was barred, so the expert didn't have testimony regarding proper security services and things like that. So there's a great contrast between the Wichelt case and our case, which is enlightened. And finally, I have a bunch of cases I want to point out, but I'm running out of time. The Rowe case, Rowe v. Bank. In that case, two office workers were shot by an intruder. They brought a case against the office building manager saying, you guys lost the master key and this is what happened. The office manager says, among other things, this has never happened. We've never had a criminal act, a violent crime occur here before. And the Supreme Court of the law said that's not a good argument, not a valid argument. It was still a legal cause, in fact. I'm out of time. Thank you for your time today. I appreciate it. Thank you, Mr. Muldoon. Thank you, Mr. Smith. The case will be taken to revisement, and that will complete our oral arguments for the day.